UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA ANDERSON,<br>Plaintiff<br>v.<br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br>Defendant. | Case No. 2:17-cv-03127-GJS<br><br>**MEMORANDUM OPINION AND ORDER** |

## I. PROCEDURAL HISTORY

On April 26, 2017, Plaintiff Jessica Anderson ("Plaintiff") filed a Complaint seeking review of a decision by Defendant, the Acting Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income ("SSI"). On August 7, 2017, the Commissioner filed an Answer to the Complaint and lodged the Administrative Record ("AR"). On September 8, 2017, the Commissioner lodged a supplement to the AR. The parties filed consents to proceed before the undersigned United States Magistrate Judge [Dkts. 11 & 23] and briefs addressing disputed issues in the case [Dkt. 18 ("Pl. Br."), Dkt. 21 ("Def. Br."), & Dkt. 22 ("Pl. Rep.")]. The Court has taken the parties' briefing under submission without oral argument. For the reasons that follow, the Court finds that this matter should be remanded for additional proceedings.

## II. ADMINISTRATIVE DECISION UNDER REVIEW

On September 10, 2012, Plaintiff filed an application for SSI, alleging disability since May 1, 2003, due to depression, anxiety, personality disorder, learning disorder, history of seizures, low back pain with radiculopathy, and obesity. [AR 22, 104-11, 130, 174.] Plaintiff's application was denied initially and on reconsideration. [AR 74-77, 83-87.] Hearings were held before Administrative Law Judge Mary L. Everstine ("the ALJ") on October 28, 2014 and May 19, 2015. [AR 42-48, 670-86.]

On June 2, 2015, the ALJ issued a decision applying the sequential evaluation process to find Plaintiff not disabled. [AR 22-34]; *see* 20 C.F.R. § 416.920(b)-(g)(1). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the date of her application, September 10, 2012. [AR 24.] At step two, the ALJ determined that Plaintiff has the following severe impairments: morbid obesity, seizure disorder well controlled on medication, lumbar degenerative disc disease without stenosis, borderline intellectual functioning, and a history of methamphetamine dependence in remission. [*Id*.] At step three, the ALJ determined that Plaintiff's conditions did not meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [AR 27.] Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform medium work (20 C.F.R. § 416.967(c)), with the following limitations:

> [Plaintiff] is limited to occasional climbing of ropes, ladders, and scaffolds and occasional balancing. [Plaintiff] is restricted to frequent climbing of stairs or ramps and frequent stooping, kneeling, crouching, and crawling. [Plaintiff] cannot work around unprotected heights. [Plaintiff] cannot operate hazardous or moving machinery. [Plaintiff] is limited to simple, routine tasks.

[AR 28.] At step four, the ALJ determined that Plaintiff does not have any past relevant work. [AR 32.] At step five, the ALJ determined that Plaintiff could perform jobs existing in significant numbers in the national economy. [AR 33.]

The Appeals Council denied review of the ALJ's decision on October 14, 2016. [AR 7-9.] This action followed.

Plaintiff now raises the following issues challenging the ALJ's findings and determination of non-disability:

1. The ALJ improperly assessed and rejected the opinion of the examining psychologist.
2. The ALJ's RFC and step five finding contain legal errors and are not supported by substantial evidence.
3. The ALJ improperly assessed and rejected the third party written testimony.
4. The ALJ improperly discredited the testimony of Plaintiff.

[Pl. Br. at 2-25; Pl. Rep. at 1-10.] Plaintiff requests reversal and remand for payment of benefits or, in the alternative, remand for further administrative proceedings. [Pl. Br. at 25; Pl. Rep. at 10.]

The Commissioner asserts that the ALJ's decision should be affirmed, or in the alternative, remanded for further development of the record if the Court finds error in the ALJ's consideration of the record. [Def. Br. at 9.]

### III. GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation and quotations omitted); *see also Hoopai*, 499 F.3d at 1074.

///
///

## IV. DISCUSSION

Plaintiff contends the ALJ erred by improperly rejecting the opinion of an examining psychologist, Dr. Ahmed El Sokkary. [Pl.'s Br. at 2-10; Pl. Rep. at 1-4.]

In general, a treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ must provide clear and convincing reasons supported by substantial evidence to reject the uncontradicted opinion of a treating or examining physician. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester*, 81 F.3d at 830-31). If a treating or examining doctor's opinion is contradicted by another medical opinion, an ALJ may reject it only by providing specific and legitimate reasons supported by substantial evidence. *Bayliss*, 427 F.3d at 1216. "This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007)). An ALJ can satisfy the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (internal quotation marks and citation omitted).

In December 2014, consultative examiner Dr. El Sokkary conducted a psychological evaluation of Plaintiff and completed a medical source statement. [AR 448-51, 453-55.] Plaintiff reported that she started having sexual intercourse at age eight, was raped when she was 13 years old, was in special education classes until she left school in the 11th grade, received a diploma through the computer with the help of her mother, had six children all of whom were adopted out, received SSI before she was incarcerated, and had been hospitalized in 2014 and while in prison for suicidal ideation and "cutting." [AR 448-49.] Plaintiff complained she suffered

from anxiety, depression, auditory hallucinations, paranoia, seizures, insomnia, and chronic low back pain. [AR 448-49.] Dr. El Sokkary reported that Plaintiff was able to care for hygiene and grooming, and was able to participate in daily living activities, such as light cooking, cleaning, and water aerobics, but spent most of her time with her mother watching television. [AR 448.] Plaintiff's mental status examination revealed Plaintiff was polite, cooperative, and alert, had good eye contact, and was fully oriented, but she had poor sleep, underproductive thought process, a history of suicidal ideation with hospitalizations, numerous arrests, past substance abuse, and was receiving therapy and medication for depression and anxiety. [AR 449.]

Dr. El Sokkary also administered standardized intelligence tests. [AR 450.] Plaintiff received a full scale IQ score of 71, which was in the borderline range. [*Id.*] Plaintiff's scores in verbal comprehension, working memory and auditory memory score were in the extremely low range. [*Id.*] Plaintiff's scores in perceptual reasoning, processing speed, and visual memory were in the low average range. [*Id.*]

Based on the examination, Dr. El Sokkary found that Plaintiff's overall clinical presentation was "an individual with borderline cognitive abilities, with symptoms of bipolar and psychosis." [AR 451.] He assigned Plaintiff a Global Assessment of Functioning score of 53. [*Id.*]

As for Plaintiff's ability to perform work-related activities, Dr. El Sokkary opined that Plaintiff would have "moderate" restrictions in the ability to understand, remember, and carry out simple instructions, make judgments on simple work-related decisions, and respond appropriately to usual work situations and to changes in a routine work setting and "extreme" limitations understanding, remembering, and carrying out complex instructions. [AR 451, 453-54.] Dr. El Sokkary also found that Plaintiff "struggled to maintain a sufficient level of concentration, persistence, and pace," indicating "she would have difficulty in a competitive work

setting" and "may have some difficulty keeping a regular workday/workweek schedule without brief interruptions from psychiatric symptoms." [AR 451.] Dr. El Sokkary concluded that if Plaintiff's disability application were to be approved, she would not be able to manage supplemental funds. [AR 451, 455.]

The ALJ rejected Dr. El Sokkary's assessment of Plaintiff's "extreme limitations" because (1) Dr. El Sokkary's opinion was "not supported by objective mental health evidence," (2) Plaintiff was able to perform a number of daily activities and had earned a GED on the computer, (3) Plaintiff's mental status examination was inconsistent with Dr. El Sokkary's opinion, (4) Plaintiff's intelligence test scores in the extremely low range were not supported by any other physician and were inconsistent with Plaintiff's ability to complete high school, and (5) the state agency medical consultants concluded that Plaintiff had no severe mental disorder. [AR 31.] Substantial evidence does not support the ALJ's decision.

The ALJ's rejection of Dr. El Sokkary's opinion as unsupported by objective mental health evidence is contradicted by the record. [AR 31.] Plaintiff's test results showed an individual with a full scale IQ in the borderline range with a score of 71, scores in the extremely low range in auditory memory, immediate memory, verbal comprehension, and working memory,[1] and scores in the low average range in perceptual reasoning, processing speed, and visual memory. [AR 450.] Dr. El Sokkary reported Plaintiff's complaints of poor sleep, problems with depression and anxiety, prior history of suicidal ideation with hospitalizations, and under productive thought process. [AR 449.] Plaintiff's medical records also confirm Plaintiff's long history of depression and anxiety and document Plaintiff's complaints of memory problems, auditory hallucinations, and paranoia. [AR 241, 249-55, 276, 280, 282-

---

[1] As discussed in more detail below, the ALJ rejected Plaintiff's verbal comprehension and working memory scores, but failed to state adequate reasons for doing so. [AR 31, 450.]

6

85, 288, 305, 317, 325, 333, 342-43, 347, 402, 418, 463, 472, 477, 482, 497, 526, 533, 539, 546, 557, 567, 630.] Thus, the record lacks substantial evidence to support the ALJ's conclusion that Dr. El Sokkary's opinion, itself, was unsupported by the objective mental health evidence. To the contrary, it was, in fact, supported by objective mental health evidence.

Plaintiff's activities of daily living and online high school diploma do not justify the ALJ's decision to reject Dr. El Sokkary's assessment of Plaintiff's ability to function in the workplace. [AR 31, 451, 453-54.] Although Plaintiff acknowledged she was able to maintain personal hygiene, perform some basic household chores, and attend water aerobics classes, the record also reveals that Plaintiff suffers from depression, anxiety, and auditory hallucinations, and spends almost all of her time with her mother watching television. [AR 448-49, 451, 539, 567, 674, 678-82.] And, while Plaintiff was able to earn a high school diploma online after her release from prison at age 32, Plaintiff explained that she has difficulty reading, problems with memory, cannot manage her own money or make change, and relied on her mother to read her assignments and help with the answers. [AR 448, 674, 680, 683.] Thus, Plaintiff's limited daily activities and receipt of an online diploma are not in conflict with Dr. El Sokkary's opinion. *See Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) ("A claimant need not be completely incapacitated to receive benefits.") (citing *Smolen v. Chater*, 80 F.3d at 1273, 1284 n.7 (9th Cir. 1996)).

The ALJ also discounted Dr. El Sokkary's opinion because Plaintiff's mental status examination revealed some normal findings, except for an underproductive thought process. [AR 31, 449.] Although the ALJ correctly notes that Dr. El Sokkary reported that Plaintiff was "polite and cooperative," "oriented in all spheres," "made good eye contact," had normal speech, and "reportedly had not abused drugs in a year," the ALJ does not explain how these particular aspects of the mental status examination are inconsistent with the limitations assessed by Dr. El

7

Sokkary, such as moderate restrictions in the ability to understand, remember, and perform simple tasks and difficulties completing a normal workday/workweek without brief interruptions from psychiatric symptoms. [AR 449, 451.] When an ALJ seeks to discredit a medical opinion, she must explain why her own interpretations, rather than those of the doctors, are correct. *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Moreover, the ALJ did not address several of Dr. El Sokkary's other findings in the mental status examination. [AR 31, 449.] As discussed, Dr. El Sokkary reported Plaintiff's complaints of poor sleep, depression, and anxiety, and prior history of suicidal ideation with hospitalizations. [AR 449.] Dr. El Sokkary also noted that Plaintiff was receiving weekly therapy and medication for depression and anxiety. [AR 448-49.] The ALJ's selective reliance on only some of Dr. El Sokkary's findings in the mental status examination does not provide a sufficient basis for rejecting his opinion. *See Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) (a treating doctor's "statements must be read in context of the overall diagnostic picture he draws").

The ALJ "rejected" Plaintiff's extremely low verbal comprehension and working memory scores, because "no other physician reported such extreme mental impairment." [AR 31.] However, the ALJ failed to explain how the absence of any corroborating test scores undermined the validity of Plaintiff's scores. *See*, *e.g.*, *Stokes v. Astrue*, No. CV 09-1264-PK, 2011 WL 285224, at *8 (D. Or. Jan. 4, 2011) ("the ALJ improperly rejected Stokes' IQ scores because he never explicitly commented on their validity"); *Alcaraz v. Berryhill*, No. CV 16-4784 JC, at *4 (C.D. Cal. Mar. 28, 2017) ("An ALJ may reject an IQ score as invalid where substantial evidence supports doing so"). The ALJ also incorrectly found that Plaintiff "acknowledged she was able to complete high school." [AR 31.] As discussed, Plaintiff received a diploma online, but her mother had read the assignments to her and helped with the answers. [AR 448, 674.] Thus, the ALJ's

rejection of Plaintiff's verbal comprehension and working memory scores is not supported by substantial evidence and is not a specific and legitimate basis for rejecting Dr. El Sokkary's opinion.

Finally, the ALJ relied on the opinions of the non-examining state agency medical consultants who concluded that Plaintiff's mental impairment was not severe. [AR 31, 54-55, 66-67.] The ALJ found that these doctors' opinions were "more consistent with the lack of mental health findings and treatment in the record." [*Id.*] However, the opinions of non-examining state agency medical consultants, standing alone, do not constitute substantial evidence to overcome the opinion of an examining physician. *See Lester*, 81 F.3d at 832 ("In the absence of record evidence to support it, the nonexamining medical advisor's testimony does not by itself constitute substantial evidence that warrants a rejection of . . . the examining psychologist's opinion."); *Erickson v. Shalala*, 9 F.3d 813, 818 n. 7 (9th Cir. 1993) (same). Moreover, the state agency medical consultants conducted their review of Plaintiff's records in 2012 and 2013, and did not have the opportunity to review Dr. El Sokkary's consultative evaluation or any of Plaintiff's treatment records from 2013, 2014, or 2015. [AR 50-52, 54-55, 66-67, 401-669.] Thus, the opinions of the state agency medical consultants did not constitute a specific, legitimate basis for rejecting Dr. El Sokkary's opinion.

In sum, the ALJ improperly discounted Dr. El Sokkary's opinion as to the severity of Plaintiff's mental condition and her ability to work. Accordingly, remand is warranted.

## V. CONCLUSION

When the Court reverses an ALJ's decision for error, the Court "ordinarily must remand to the agency for further proceedings." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*,

775 F.3d 1090, 1099 (9th Cir. 2014). But the Court does have discretion to make a direct award of benefits under the "credit-as-true" rule, which asks whether: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. Each part of this three-part standard must be satisfied for the Court to remand for an award of benefits, *id.*, and it is only the "unusual case" that meets this standard, *Benecke*, 379 F.3d at 595. Moreover, if "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled," a court must remand for further proceedings "even though all conditions of the credit-as-true rule are satisfied." *Garrison*, 759 F.3d at 1021; *see also Leon*, 880 F.3d at 1045 ("an award under [the credit-as-true] rule is a rare exception, and the rule was intended to deter ALJs from providing boilerplate rejections without analysis"); *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) ("The touchstone for an award of benefits is the existence of a disability, not the agency's legal error.").

Here, the ALJ's decision to reject Dr. El Sokkary's opinion did not reflect a full and accurate consideration of all the evidence. Because questions regarding the extent to which Plaintiff's symptoms limit her ability to work remain unresolved, the record has not been fully developed and remand for further proceedings is appropriate. *See Garrison*, 759 F.3d at 1020; *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2016) (remand for further proceedings is appropriate when the record is not "fully developed"). On remand, the ALJ should conduct a review of the entire record in a manner consistent with the Court's findings and re-weigh the medical evidence. Depending on the outcome of that review, the ALJ must provide legally justifiable reasons for rejecting any of the opinions provided by Plaintiff's

physicians.[2]

For all of the foregoing reasons, **IT IS ORDERED** that:

(1) the decision of the Commissioner is REVERSED and this matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Memorandum Opinion and Order; and

(2) Judgment be entered in favor of Plaintiff.

**IT IS ORDERED.**

DATED: April 30, 2018

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE

---

[2] The Court has not reached the remaining issues raised by Plaintiff (i.e., whether the ALJ erred in assessing Plaintiff's RFC and determining Plaintiff was capable of performing other work, whether the ALJ properly considered a third party statement, and whether the ALJ properly discounted Plaintiff's subjective symptom testimony), except as to determine that reversal with the directive for immediate payment of benefits would not be appropriate at this time. However, the ALJ should address Plaintiff's additional contentions of error when evaluating the evidence on remand.